UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
EVANSVILLE DIVISION

| | |
|---|---|
| GILLESPIE & POWERS, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 3:22-cv-00020-RLY-MPB |
| ) | |
| ALCOA WARRICK LLC, et al., ) | |
| ) | |
| Defendants. ) | |

**ORDER ON DEFENDANTS' MOTION TO TRANSFER**

Alcoa Warrick LLC, n/k/a Kaiser Aluminum, LLC (collectively, "Kaiser")[1] contracted with Gillespie & Powers, Inc., for Gillespie to provide services, labor, equipment, materials, and supervision to build a coated scrap melter ("CSM") at a Newburgh, Indiana location. Kaiser did not pay in full at the contract's completion, so Gillespie originally filed suit in state court. Kaiser removed the case to this Court and now seeks to transfer this action to the United States District Court for the District of Delaware under 28 U.S.C. § 1404(a) because the contract's forum-selection clause requires that all disputes be heard by a Delaware court applying Delaware law. (Docket No. 13). However, Gillespie & Powers, Inc. argues that the forum-selection clause is void under Indiana's anti-venue statute, which prohibits the selection of other forums for either the choice of forum or choice of law in contracts governing improvement of real estate located in Indiana. For the reasons that follow, the Court finds that Indiana's anti-venue statute does not apply, and the Contract's forum-selection clause and choice of law clause are enforceable and that transfer is appropriate.

---

[1] Alcoa Warrick LLC is now known as Kaiser Aluminum Warrick, LLC. (Docket No. 3).

1

I.     BACKGROUND AND PROCEDURAL HISTORY

The factual allegations herein are drawn largely from Gillespie's Complaint or the contract, which was attached to the Complaint (Docket No. 1-1 at ECF pp. 17-22, Compl.), and are not necessarily objectively true.

This diversity case arises out of a dispute over a Contract for Gillespie to provide Alcoa Warrick LLC ("Alcoa") services, labor, equipment, materials, and qualified supervision to provide a CSM, a large industrial furnace system (the "Project"). (Compl., ¶ 5; Docket No. 1-1 at ECF pp. 23-25, Contract, ¶ 3; Docket No. 1-1 at ECF p. 26, Statement of Work; Docket No. 1-1 at ECF pp. 47, 83).

Gillespie, a Missouri citizen (Compl., ¶ 1) and Kaiser, a Delaware (incorporation) and California (principal place of business) citizen (Docket No. 3), agreed that Gillespie would complete the Project on location in Newburgh, Indiana (the "Property"), in exchange for payment of more than $12 million. (Compl., Ex. A, Attachment A, I. Commercial Proposal, Sections 1.1-1.3). Kaiser was the Property owner.[2] (Compl., ¶ 6). The Contract included a choice of law and forum-selection clause that provided:

> Any and all claims or matters of dispute between the parties to this Contract . . . shall be resolved, governed by, construed, and enforced in accordance with the laws of the State of Delaware . . . but not including its choice of law rules.
>
> * * *
>
> Any and all claims or matters of dispute referenced in this paragraph shall be resolved in a court of competent jurisdiction in Wilmington, Delaware which courts shall have exclusive jurisdiction of all such disputes. Seller waives any and all objections that it might otherwise have as to personal jurisdiction or venue in such courts.

---

[2] Warrick Real Estate is the current Property owner and is a citizen of Delaware and Pennsylvania. (Compl., ¶ 29; Docket No. 1, ¶ 9).

2

(Compl., Ex. A, Attachment C, Section 51, Docket No. 1-1 at ECF p. 285).

Following the Contract's execution, the parties agreed to subsequent amendments to the Contract in the form of revised purchase orders, and Kaiser requested changes outside Gillespie's agreed upon scope, all of which Gillespie performed. (Compl., ¶¶ 7, 8). Gillespie submitted several change orders to Alcoa for the requested extra work, and Gillespie timely and completely performed the scope of its work, including Kaiser's requested changes, on the Project in accordance with all terms of the Contract. (Compl., ¶¶ 9-10). Despite Gillespie's performance, Kaiser has failed to pay Gillespie the full amount owed under the Contract, including, but not limited to, work performed under the Contract and its amendments, change order work and un-scoped meeting labor for the Project. (Compl., ¶ 11). Gillespie claims it is owed more than $2.4 million. (Compl., ¶ 13). Gillespie then filed a mechanic's lien with the Recorder of Warrick County, Indiana, where the Project was located. (*Id.* ¶ 26).

Gillespie filed the suit in state court, but Kaiser, with consent from Warrick Real Estate, removed the action, invoking the Court's diversity jurisdiction. *See* 28 U.S.C. § 1332. Gillespie's Complaint asserts breach of the Contract, unjust enrichment, and foreclosure of the mechanic's lien on the Property. (Compl.). Kaiser seeks to transfer this matter to the United States District Court for the District of Delaware, under 28 U.S.C. § 1404(a) due to the forum-selection clause. Gillespie contends that Indiana's anti-venue statute, Ind. Code § 32-28-3-17, voids both the forum-selection and choice of law clauses. In the alternative, Gillespie contends that the anti-venue statute expresses a "strong public policy" of this forum, such that Delaware would not enforce the forum-selection clause.

## II. LEGAL STANDARD

Section 1404(a) provides that "[f]or the convenience of parties and witnesses, in the

interest of justice, a district court may transfer any civil action to any other district or division to which all parties have consented." Section 1404(a) provides the "mechanism for enforcement of forum-selection clauses that point to a particular federal district." *Atlantic Marine Const. Co., Inc. v. U.S. Dist. Court for the Western Dist. of Texas*, 571 U.S. 49, 59 (2013). A valid forum-selection clause waives a party's right to assert his or her own inconvenience as a reason to transfer, leaving the court to consider only public-interest factors. *Id.* at 582; *see also Heller Fin., Inc. v. Midwhey Powder Co.*, 883 F.2d 1286, 1293 (7th Cir. 1989).

### III.  DISCUSSION

**A.  Forum-Selection Clause**

Because the parties dispute the enforceability of the forum-selection clause, the court must resolve this threshold issue.

**1.  Applicable Law**

Before turning to enforceability—that is, whether the forum-selection clause factors into the § 1404(a) analysis—the court must determine what law governs the inquiry. Kaiser takes the position the Delaware law applies to this dispute pursuant to the Contract's choice of law clause, and that Delaware law would respect the parties' Delaware forum-selection clause. Gillespie, however, argues that Indiana law applies to this dispute notwithstanding the Delaware choice of law clause, and under Indiana law, the Delaware forum-selection clause is invalid.

Generally, a district court sitting in diversity applies the choice of law rules of the state in which it sits. *Jackson v. Payday Financial, LLC*, 764 F.3d 765, 774 (7th Cir. 2014). When evaluating a forum-selection clause in a contract that also contains a choice of law provision, the court applies the law of the jurisdiction that the parties chose to govern the rest of the contract. *Id.* at 774-75 (affirming the rule of the Seventh Circuit as set forth in *Abbott Laboratories v.*

*Takeda Pharmaceutical Co.*, 476 F.3d 421, 423 (7th Cir. 2007)).

If the Seventh Circuit's guidance ended here, we would apply Delaware law. But, this argument assumes the validity of the choice of law provision. *Id.* at 775 ("Assuming the validity of this choice of law provision . . ."). In *Jackson*, in dicta, the Seventh Circuit discussed applying Illinois law to the parties' dispute. *See also id.* at 775, n. 23 ("We agree that a more-than-colorable argument can be made that the loan agreement's choice of law clause should not be enforced and that Illinois law ought to govern the parties' dispute.").

Similar to *Jackson*, complicating matters is Indiana's anti-venue statute, which provides as follows: "A provision contained in a contract for the improvement of real estate in Indiana is void if the provision: (1) makes the contract subject to the laws of another state; or (2) requires litigation, arbitration, or other dispute resolution process on the contract occur in another state." Ind. Code § 32-28-3-17. If this provision applies, there would be no forum-selection or choice-of-law clauses to analyze.

However, the Court does not need to determine whether to apply Indiana or Delaware law to consider the Contract's choice of law provision. If this contract falls within the Indiana anti-venue statute, the result is the same whether Indiana or Delaware law applies. *See Harding Materials, Inc. v. Reliable Asphalt Products, Inc.*, 1:16-cv-02681-JMS-MJD, 2017 WL 495787, at *3 (S.D. Ind. Feb. 6., 2017) (holding under laws of both the forum state, Indiana, and the choice-of-law state, Kentucky, the forum-selection clause would be void and unenforceable due to Indiana's anti-venue statute). If Indiana law, and thus, Indiana's anti-venue statute applies, the forum-selection clause is void and unenforceable. But if Delaware law applies, Indiana's anti-venue statute is still germane to the analysis. Like the majority of jurisdictions, Delaware does not enforce a forum-selection clause where "enforcement would contravene a strong public

policy of the forum in which the suit is brought, whether declared by statute or by judicial decision." *Bbdova, LLC v. Automotive Technologies, Inc.*, 358 F. Supp. 2d 387 (D. Del. 2005) (quoting *M/S Bremen v. Zapata Off-Shore CO.*, 407 U.S. 1, 10, 92 S. Ct. 1907, 32 L.Ed.2d 513 (1972)). Here, the anti-venue statute with its language providing that forum-selection clauses are "void," expresses Indiana's strong public policy in "having these types of actions litigated within its borders." *E & J Gallo Winery v. Morand Bros. Beverage Co.*, 247 F. Supp. 2d 973, 978 (N.D. Ill. 2002); *see Coral Chem. Co. v. Chemetall U.S., Inc.*, No. 4:16-cv-00023-RLY-DML, 2016 WL 3521952, at *5 (S.D. Ind. June 28, 2016) (applying similar analysis and noting that the relevant issue is whether the "forum-selection clause violates Indiana's public policy"). Thus, assuming the Contract is one for the improvement of real estate, as required to fit into Indiana's anti-venue statute, under either Indiana law or Delaware law, the forum-selection clause would be unenforceable.

**2. Applicability of Indiana's Anti-Venue Statute**

Kaiser contends that Gillespie's argument rests upon a flawed premise that the Contract involves an Indiana construction project. Rather, Kaiser promotes, it purchased the engineering and delivery of a CSM from Gillespie. Kaiser argues that the statute does not apply to sales of engineering services or equipment.

Thus, at issue is the proper interpretation of Indiana Code § 32-28-3-17 and, more specifically, the proper interpretation of the anti-venue statute's use of the phrase "improvement of real estate."

> In statutory construction, our primary goal is to ascertain and give effect to the intent of the legislature. *Gray v. D & G, Inc.*, 938 N.E.2d 256, 259 (Ind. Ct. App. 2010). The language of the statute itself is the best evidence of legislative intent, and we must give all words their plain and ordinary meaning unless otherwise indicated by statute. *Id.* Furthermore, we presume that the legislature

> intended statutory language to be applied in a logical manner consistent with the statute's underlying policies and goals. *Id.* However, we will not interpret a statute which is clear and unambiguous on its face; rather, we will give such a statute its apparent and obvious meaning. *Ind. State Bd. of Health v. Journal-Gazette Co.*, 608 N.E.2d 989, 992 (Ind. Ct. App. 1993), *adopted*, 619 N.E.2d 273 (Ind. 1993).

*Sullivan Corp. v. Raabco Enterprises, LLC*, 160 N.E.3d 1124, 1126 (Ind. Ct. App. 2020) (quoting *U.S. Steel Corp. v. N. Ind. Pub. Serv. Co.*, 951 N.E.2d 542, 552 (Ind. Ct. App. 2011)).

Indiana has not defined the term "improvement of real estate." Moreover, Indiana courts have not formulated a clear analysis for categorizing something as such an improvement. In *Janero v. Norfolk Southern Railway Co.*, the Northern District of Indiana discussed Indiana court's interpretation of the word "improvement" in the context of the broader mechanic's lien statute. No. 1:13-cv-155-TLS, 2017 WL 993055, at (N.D. Ind. Mar. 15, 2017) ("Indiana courts have cited Black's [Law dictionary]'s definition favorably when discussing [the] word [improvement] in the context of a mechanic's lien.") (citing *Haimbaugh Landscaping, Inc. v. Jegen*, 653 N.E.2d 95, 102 n.18 (Ind. Ct. App. 1995)) (landscaping falls within the definition of improvement). Black's Law Dictionary defines "improvement" "[a]n addition to property, usu. real estate, whether permanent or not; esp., one that increases its value or utility or that enhances its appearance." Black's Law Dictionary (11th ed. 2019).

In an analogous setting, the Indiana Supreme Court has set forth a "a 'commonsense' analysis," over a fixture analysis for determining whether something is an "improvement to real property," such that it falls within the construction statute of repose. *Gill v. Evansville Sheet Metal Works, Inc.*, 970 N.E.2d 633, 640-42 (Ind. 2012) ("[W]e hold that an 'improvement to real property' for purposes of the CSoR is 'a permanent addition to or betterment of real property that enhances its capital value and that involves the expenditure of labor or money and is designed to

make the property more useful or valuable as distinguished from ordinary repairs.'") (citing *Webster's Third New International Dictionary* 1138 (unabridged ed. 1976)).

Here,[3] Section 5 of the proposal, entitled "Scope of Work and Supply" describes the scope as follows:

> This scope of the supply will consist of the engineering of the CSM System proper, refractory lining and the supply of the combustion systems, controls, and all of the associated components and equipment needed to complete a new operational MCAM based on Gillespie & Powers, Inc.'s engineering documents.

(Docket No. 1-1 at ECF p. 83). Moreover, while Gillespie provided "a drawing indicating foundation requirements, loads, positions of services, etc.[,] Kaiser was "responsible for the design, supply and installation of the foundation and all foundation work (including all embedded steel and anchor bolts)." (Docket No. 1-1 at ECF pp. 64-65). Likewise, the pricing for the Project did not include civil or any foundation work, the furnace's utility tie-ins were to be within fifty feet, and the utilities and potable water were to be provided to the seller by Kaiser and to be within 25' of the work area. (*Id.* at ECF pp. 41-42). This evidence supports the conclusion that the Project was one for equipment, which, while it may have added value to Kaiser's business, did not add value to the Property itself.

The Standard Terms and Conditions of the Agreement, which include the choice of law and forum provision, are further consistent with equipment purchases, and not a construction contract. They refer to Gillespie as the "Seller." (Docket No. 1-1 at ECF pp. 249, 254). The

---

[3] Gillespie's request to file a surreply (Docket No. 31) is **DENIED**. Gillespie contends Kaiser raised a new argument, namely the Indiana anti-venue statute, in its reply brief. But, Gillespie first discussed the statute argument in its response brief. Kaiser was not required to introduce the statute in its opening brief given Kaiser finds it inapplicable. Thus, the proposed surreply does not address any new matters raised for the first time in the reply because the issue of the applicability of Indiana law was raised by Gillespie itself, in its response, and is not an entirely new issue.

Terms and Conditions define the "Work" as "collectively the Equipment and Services." (*Id.* at ECF p. 256). "Equipment" is defined as "the equipment to be designed, manufactured, and delivered by the Seller in accordance with the Contract . . ." (*Id.* at ECF p. 250). The "Services" are "all the services to be performed by the Seller under the Contract, including (i) the design, manufacture and delivery of the Equipment; (ii) the design of those parts of the Facility as detailed in the Company's Requirements as being the responsibility of the Seller; and (iii) the performance of the Associated Services." (*Id.* at ECF p. 251). Finally, other parts of the Contract and its attachment further delineate that the Contract was one for equipment and not for an improvement to real estate. For instance, an outside engineering firm familiar with the Property's building structure was to design all collection hood supports, duct supports, etc. (Docket No. 1-1 at ECF p. 169).

Gillespie suggests that because the CSM should be considered a "fixture" that turns the Agreement into one "for the improvement to real estate" within the meaning of the anti-venue statute. But, as discussed above, there is no support in the case law that Indiana would use the fixture analysis in determining whether something is an improvement to real estate. *See Gill*, 970 N.E.2d at 642-43 (rejecting the fixture approach in determining whether something was an "improvement to real property" under the Indiana construction statute of repose). Nor does Gillespie apply the test under Indiana law for determining whether something is a fixture. *Dinsmore v. Lake Elec. Co.*, 719 N.E.2d 1282, 1286 (Ind. Ct. App. 1999) (applying the fixture test: "(1) actual or constructive annexation of the article to the realty, 2) adaptation to the use or purpose of that part of the realty with which it is connected, and 3) the intention of the party making the annexation to make the article a permanent accession to the freehold.").

In *Dinsmore*, the court held equipment owned by a tenant was not a fixture because the

9

lease allowed the tenant to remove the plant, any buildings, and any tangible property at the termination of the lease. *Id.* at 1287. Similarly, here, as indicated in the Motion for Approval of Bond and to Discharge Lien filed by Warrick Real Estate LLC, the real property on which Gillespie has sought to enforce a lien is owned by Warrick Real Estate LLC. (Docket No. 22). Kaiser continues to own the equipment on that real estate, including the CSM supplied by Gillespie.

Gillespie cites *Sullivan Corp. v. Rabco Enterprises, LLC*, for the proposition that Indiana Code section 32-28-3-17, unlike other sections within the same chapter, "speaks in broad terms that reach every contract for the improvement of real estate." 160 N.E.3d 1124, 1126 (Ind. Ct. App. 2020). But the *Sullivan* court held only that Ind. Code § 32-28-3-17 is not limited to mechanic's lien foreclosure actions. *Id.* Moreover, that holding was in the context of an agreement to provide labor and materials for a construction project and says nothing about whether the statute can be extended to include a contract for a piece of equipment and related engineering services.

Because the Agreement is not governed by Ind. Code § 32-28-3-17, its mandatory forum selection clause is enforceable. The clause uses mandatory language, including "shall be resolved" and "shall have exclusive jurisdiction." There is no question that such language forms a mandatory forum selection clause. *See, e.g.*, *Firmenich Inc. v. Natural Flavors, Inc.*, 2019 WL 6522055, at *9 (Del. Super. Ct. Ct. Oct. 29, 2019) (forum selection clause providing for "exclusive jurisdiction to the State of New Jersey" was a "mandatory forum selection clause[]"); *Badger Daylighting Corp. v. Palmer*, 2019 WL 2567710, at 2 (S.D. Ind. June 20, 2019) (noting that in *Atlantic Marine*, the U.S. Supreme Court found a forum selection clause stating that disputes "shall be litigated" in the selected forum was "valid and enforceable even without words

10

like 'exclusive,' 'only,' or 'solely') (citing *Atl. Marine Const. Co.*, 571 U.S. at 53). Gillespie does not dispute that the language of the clause is mandatory.

**B. Public Interest Factors**

Under United States Supreme Court precedent, the existence of an enforceable forum-selection clause means that Gillespie's choice of forum and other "private" interests are irrelevant to the transfer analysis. *Atl. Marine Const. Co.*, 570 U.S. at 63-67. The only relevant argument is whether the public interest overwhelmingly disfavors transfer to the District of Delaware. *See id.* See also *Noble Roman's, Inc. v. Allison*, 412 F. Supp. 3d 989, 994 (S.D. Ind. 2019) ("Where a forum selection clause is involved, a district court may consider arguments about public-interest factors only.") (internal citation omitted); *Coral Chem.*, 2016 WL 3521952, at *7-8 (where the forum selection clause is valid and enforceable, "the court only considers the public-interest factors relevant to a § 1404(a) analysis").

The Supreme Court explained in *Atlantic Marine* that "[t]he [transfer] calculus changes . . . when the parties' contract contains a valid forum-selection clause, which represents the parties' agreement as to the most proper forum." 571 U.S. at 63 (internal citation omitted). As "the party acting in violation of the forum-selection clause," Gillespie "must bear the burden of showing that the public-interest factors overwhelmingly disfavor a transfer." *Atlantic Marine*, 571 U.S. at 67. *See also Yummy Yogurt Indy, LLC v. Orange Leaf Licensing, LLC*, 2015 WL 1243732, at *4 (S.D. Ind. Mar. 18, 2015). Those factors are (1) the court's familiarity with the applicable law, (2) the speed at which the case will proceed to trial, and (3) the desirability of resolving disputes in the region in which they arose. *Atl. Marine Const. Co.*, 571 U.S. at 62, n. 6.

Turning to the first factor, a court's familiarity with applicable law "is typically a non-issue in federal courts." *Badger Daylighting Corp.*, 2019 WL 2567710, at *3. "[F]ederal judges

11

routinely apply the law of a State other than the State in which they sit." *Atl. Marine Const. Co.*, 571 U.S. at 67. Here, the applicable law pursuant to the Contract's choice of law provision is Delaware, with which the District of Delaware is familiar. Even if an aspect of this dispute will involve Indiana law, or the law of any other jurisdiction, there is no persuasive argument that the District of Delaware would be unable to apply the law of another jurisdiction. Therefore, this factor does not disfavor a transfer.

Second, as of March 30, 2022, the Southern District of Indiana had 11,767 pending cases (civil and criminal) for five judgeships, whereas Delaware had only 2,241 pending cases (civil and criminal) for four judgeships.[4] The Southern District of Indiana's median time from filing to a civil trial was 41.5 months, but only 11.1 months from filing to disposition. However, Delaware was slightly faster in both respects, with only 36.3 months from filing to a civil trial and 7.9 months from filing to disposition. Therefore, this factor does not disfavor transfer to the District of Delaware. *Coral Chem. Co.*, 2016 WL 3521952, at *8 (holding that this factor does not disfavor transfer where the "parties have not provided the court reason to think either forum would decide this matter more expeditiously than the other").

Finally, as to the third factor, although Indiana may have "a vested interest in resolving a conflict that occurred within its borders," Delaware "has an equally vested interest [in] ensuring its corporations are protected." *Badger Daylighting Corp.*, 2019 WL 2567710, at *4. Kaiser is incorporated in Delaware, and Gillespie is not an Indiana corporation. At most, because Delaware and Indiana both have an interest in the dispute, the factor "weighs neither for nor against transfer." *Id.* This factor therefore does not overwhelmingly disfavor transfer.

**C. Conclusion**

---

[4] The caseload statistics referenced in this section are available at https://www.uscourts.gov/statistics-reports/federal-court-management-statistics-march-2022.

The Agreement on which Gillespie's claims are based requires that this dispute be litigated in the courts in Wilmington, Delaware; more specifically, due to the diversity of the parties, transfer is **GRANTED** under 28 U.S.C. § 1404(a) (Docket No. 13). The Court hereby directs the Clerk of Court to **TRANSFER** this matter to the United States District Court for the District of Delaware.

**SO ORDERED.**

Date: 3/13/2023

Matthew P. Brookman
United States Magistrate Judge
Southern District of Indiana

Distribution:

Terrence L. Brookie
Frost Brown Todd LLP
tbrookie@fbtlaw.com

Charles P. Edwards
BARNES & THORNBURG, LLP (Indianapolis)
charles.edwards@btlaw.com

Joseph H. Langerak, IV
Stoll Keenon Ogden PLLC
joe.langerak@skofirm.com

Cory Louis Turner
BARNES & THORNBURG, LLP (Indianapolis)
cory.turner@btlaw.com