# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| GILLESPIE & POWERS, INC., <br><br> Plaintiff, <br><br> v. <br><br> ALCOA WARRICK LLC, WARRICK REAL ESTATE LLC and KAISER ALUMINUM WARRICK, LLC, <br><br> Defendants. | C.A. No. 23-273-GBW |

## DEFENDANT WARRICK REAL ESTATE, LLC'S OPENING BRIEF IN SUPPORT OF MOTION TO DISMISS

**K&L GATES LLP**
Steven L. Caponi (No. 3484)
Matthew B. Goeller (No. 6283)
Megan E. O'Connor (No. 6569)
600 N. King St., Suite 901
Wilmington, DE 19801
Phone: (302) 416-7000
steven.caponi@klgates.com
matthew.goeller@klgates.com
megan.oconnor@klgates.com

*Attorneys for Defendant Warrick Real Estate LLC*

Dated: April 3, 2024

**TABLE OF CONTENTS**

                                                                                                                            **Page**

| | | |
|---|---|---|
| I. | INTRODUCTION | 1 |
| II. | NATURE AND STAGE OF THE PROCEEDINGS | 1 |
| III. | LEGAL STANDARD | 5 |
| IV. | ARGUMENT | 5 |
| | A. Legal Standard | 5 |
| | B. The Law of the Case Establishes That the Purchase Order Is Not A Contract for the Improvement of Real Estate, Therefore, Invalidating the Mechanic's Lien | 6 |
| | C. Even If a Mechanic's Lien Were Valid, Warrick Real Estate's Bond Releases It and the Claim Against Warrick Real Is Moot | 8 |
| | D. Warrick Real Estate's Bond Releases the Mechanic's Lien and Moots the Only Claim Against It | 11 |
| V. | CONCLUSION | 12 |

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ............................................................................................... 5, 6

*Dinsmore v. Lake Elec. Co.*,
  719 N.E.2d 1282 (Ind. Ct. App. 1999) .................................................................. 9, 10

*Gill v. Evansville Sheet Metal Works, Inc.*,
  970 N.E.2d 633 (Ind. 2012) ........................................................................................ 7

*Hayman Cash Register Co. v. Sarokin*,
  669 F.2d 162 (3d Cir. 1982) ........................................................................................ 8

*Hydrogen Master Rights, Ltd. v. Weston*,
  228 F. Supp. 320 (D. Del. 2017) ................................................................................. 5

*Jordan v. Mirra*,
  2019 U.S. Dist. LEXIS 219450 (D. Del. Dec. 20, 2019) ............................................ 7

*Sullivan Corp. v. Rabco Enters., LLC*,
  160 N.E.3d 1124 (Ind. Ct. App. 2020) ........................................................................ 6

**Statutes**

Ind. Code § 32-28-3 ................................................................................... 3, 6, 8, 9, 11

**Other Authorities**

Fed. R. Civ. Proc. 8(a)(2) ............................................................................................. 5

Fed. R. Civ. Proc. 12(b)(6) ....................................................................................... 1, 5

**I. INTRODUCTION**

Defendant Warrick Real Estate, LLC ("Warrick Real Estate"), through its undersigned counsel, respectfully moves under Federal Rule of Civil Procedure 12(b)(6) for dismissal from this case. Both the Complaint itself, and subsequent proceedings and holdings in this matter in the Southern District of Indiana, prior to transfer to this Court, establish as a matter of law that the contract at issue is one for the sale of goods and services, not one for the improvement of real estate. Accordingly, the Complaint fails to state a claim upon which relief may be granted as to Warrick Real Estate, because Warrick Real Estate cannot be subject to a mechanic's lien under Indiana law. Finally, Warrick Real Estate's bond releases the mechanic's lien and moots the foreclosure claim.

**II. NATURE AND STAGE OF THE PROCEEDINGS**

This case arises from a dispute concerning a contract (the "Purchase Order") for a Coated Scrap Melter (the "Scrap Melter") that was to be provided by Plaintiff ("Gillespie") to Defendant Alcoa Warrick, LLC ("Alcoa"). Dkt. 1-1 at 29-31[1]; *see* Complaint[2] ¶ 5. When Gillespie and Alcoa contracted for the Scrap Melter in 2018, Alcoa owned the real property (the "Real Estate") on which the Scrap Melter was to be placed. Ownership of the Real Estate, however, later transferred to Warrick Real Estate. Complaint ¶¶ 5-6, 29. Following execution of the Purchase Order, Gillespie and Alcoa agreed to numerous amendments to the Purchase Order and Alcoa requested additional changes outside the scope of the Purchase Order, which Gillespie performed. *Id*. ¶¶ 7-8.

---

[1] The various Exhibits to the Complaint (*see* Complaint ¶¶ 5, 7, 26) are in the record at Dkt. 1-1 at 23-303 and Dkt. 1-2 at 1-10.

[2] Exclusive of exhibits, the Complaint is in the record at Dkt. 1-1 at 17-22.

The Purchase Order describes its scope as the engineering of the Scrap Melter and associated components and equipment:

> The scope of the supply will consist of the engineering of the CSM System proper, refractory lining and the supply of the combustion system, controls, and all of the associated components and equipment needed to complete a new operational MCAM based on Gillespie & Powers, Inc.'s engineering documents.

Dkt. 1-1 at 83.

Under the Purchase Order, while Gillespie provided "a drawing indicating foundation requirements, loads, positions of services, etc.," Alcoa was "responsible for the design, supply and installation of the foundation and all foundation work (including all embedded steel and anchor bolts)." *Id*. at 64-65. The Purchase Order explicitly excludes "civil or any foundation work," and specified the location of utility tie-ins to be provided by Alcoa. *Id.* at 41-42.

Consistent with this, the Purchase Order's Standard Terms and Conditions (the "Terms and Conditions") refer to Gillespie as "Seller," (*e.g.*, *id*. at 251), and define the "Work," as "collectively the Equipment and Services." *Id*. "Equipment," in turn, is defined in the Purchase Order as "the equipment to be designed, manufactured and delivered by the Seller in accordance with the Contract . . ." (*id.* at 250), and "Services" refers to "all the services to be performed by the Seller under the Contract, including: (i) the design, manufacture and delivery of the Equipment; (ii) the design of those parts of the Facility as detailed in the Company's Requirements as being the responsibility of the Seller; and (iii) the performance of the Associated Services." *Id*. The Purchase Order specifies that an outside engineering firm familiar with the Real Estate was to design all "collection hood supports, duct supports, etc." *Id*. at 169. Gillespie alleges that it performed under the Purchase Order and that Alcoa has failed to pay the full amount owed. Complaint ¶¶ 10-11.

Gillespie recorded a Notice of Intention to Hold Mechanic's Lien (the "Mechanic's Lien") pursuant to Indiana Code § 32-28-3-3 on the Real Estate on January 15, 2021. *Id*. ¶ 26. The only claim asserted against Warrick Real Estate is for foreclosure of the Mechanic's Lien. *See generally* Complaint.

Gillespie originally filed this litigation in Indiana state court, and the case was removed to the Southern District of Indiana (the "Indiana Court"). The Indiana Court then transferred the case to this Court pursuant to a forum-selection clause in the Purchase Order. Dkt. 39 (the "Transfer Order"). The Transfer Order necessarily determined that the Scrap Melter is personal property as a matter of law. The Indiana Court determined that if the Purchase Order is a contract "for the improvement of real estate, as required to fit into Indiana's anti-venue statute (Ind. Code § 32-28-3-17), under either Indiana law or Delaware law, the forum-selection clause would be unenforceable." Dkt. 39 at 6.

Accordingly, the Indiana Court had to consider whether the Purchase Order was one for the "improvement of real estate" under Indiana Code § 32-28-3-17. Dkt. 39 at 6. In defining the term, the Indiana Court endorsed a "'commonsense analysis,' over a fixture analysis for determining whether something is an 'improvement to real property.'" *Id*. at 7 (citing *Gill v. Evansville Sheet Metal Works, Inc*., 970 N.E.2d 633, 640-42 (Ind. 2012). Under this approach, an "improvement to real property" is one that entails "a permanent addition to or betterment of real property that enhances its value and that involves the expenditure of labor or money and is designed to make the property more useful or valuable as distinguished from ordinary repairs." *Id*.

Applying this framework, the Indiana Court first referred to the same Scope of Work described above: that the Purchase Order's scope included "the engineering of the [Scrap Melter], refractory lining and the supply of the combustion systems, controls, and all of the associated

3

components." *Id*. at 8 (quoting Dkt. 1-1 at 83). The Indiana Court emphasized that Alcoa – not Gillespie – "was responsible for the design, supply and installation of the foundation and all foundation work (including all embedded steel and anchor bolts)." *Id*. (quoting Dkt. 1-1 at 64-65 (internal quotations omitted). "Likewise," the Indiana Court continued, "the pricing for the Project did not include civil or any foundation work, the furnace's utility tie-ins were to be within fifty feet, and the utilities and potable water were to be provided to the seller by Kaiser and to be within 25' of the work area." *Id*. (citing Dkt. 1-1 at 41-42). This, the Transfer Order concludes, "supports the conclusion that the Project was one for equipment, which, while it may have added value to [Alcoa]'s business, did not add value to the Property itself." *Id*.

The Indiana Court also analyzed the Purchase Order's Standard Terms and Conditions and found that they too support the conclusion that the Purchase Order is a contract for the sale of goods, not the improvement of real estate. *Id*. Gillespie is defined as the "Seller," the Indiana Court notes, and the "Work" is defined as "collectively the Equipment and Services." *Id*. at 8-9 (quoting Dkt. 1-1 at 249, 254, 256) (internal quotations omitted). "Equipment" is "the equipment to be designed, manufactured, and delivered by the Seller," the Indiana Court continued, and "Services" are "all the services to be performed by the Seller under the [Purchase Order], including (i) the design, manufacture, and delivery of the Equipment; (ii) the design of those parts of the Facility as detailed in the Company's Requirements; and (iii) the performance of the Associated Services." *Id*. at 9 (quoting Dkt. 1-1 at 250-51, 256 (internal quotations omitted).).

Prior to transfer, the District Court for the Southern District of Indiana entered an order (the "Bond Order") concerning the Mechanic's Lien, approving a form and amount of a bond and ordering that "the Real Estate shall be and hereby is released from the Lien and shall be and hereby is discharged from the Lien upon the filing of the fully executed Bond with the Court within seven

4

(7) days of this Order." Dkt. 28 at 2. The required bond was timely filed (Dkt. 29) and the Mechanic's Lien has accordingly been released.

## III. LEGAL STANDARD

Federal Rule of Civil Procedure 12(B)(6) permits dismissal of a complaint for "failure to state a claim upon which relief may be granted." A pleading must contain "a short and plain statement showing that the pleader is entitled to relief." Fed. R. Civ. Proc. 8(a)(2). The court must accept factual allegations as true, but while the allegations need not be detailed, "they must provide more than labels, conclusions, or a formulaic recitation of the claim elements." *Hydrogen Master Rights, Ltd. v. Weston*, 228 F. Supp. 320, 327 (D. Del. 2017) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007)) (internal quotation omitted). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).

Warrick Real Estate denies substantial allegations in the Complaint but for purposes of this Motion only will assume them to be true in accordance with the legal standard.

## IV. ARGUMENT

### A. Legal Standard

Federal Rule of Civil Procedure 12(B)(6) permits dismissal of a complaint for "failure to state a claim upon which relief may be granted." A pleading must contain "a short and plain statement showing that the pleader is entitled to relief." Fed. R. Civ. Proc. 8(a)(2). The court must accept factual allegations as true, but while the allegations need not be detailed, "they must provide more than labels, conclusions, or a formulaic recitation of the claim elements." *Hydrogen Master Rights, Ltd. v. Weston*, 228 F. Supp. 320, 327 (D. Del. 2017) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007)) (internal quotation omitted). "To survive a motion to dismiss, a

complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).

While Warrick Real Estate in fact denies many of the allegations in the Complaint, it assumes them to be true for purposes of its Motion to Dismiss.

**B.     The Law of the Case Establishes That the Purchase Order Is Not A Contract for the Improvement of Real Estate, Therefore, Invalidating the Mechanic's Lien**

In granting the Defendants' Motion to Transfer and transferring this case to this District under the forum-selection clause in the Purchase Order, the Indiana Court first considered and rejected, Gillespie's contention that the Purchase Order was a contract for the improvement of real estate. *See* Dkt. 39 at 1. It was necessary for the Indiana Court to resolve this question, because Indiana's anti-venue statute prohibits enforcement of choice-of-law and forum-selection provisions in a "contract for the improvement of real estate in Indiana." Ind. Code § 32-28-3--17[3]; *see Sullivan Corp. v. Rabco Enters., LLC*, 160 N.E.3d 1124, 1127 (Ind. Ct. App. 2020) (anti-venue statute "should be read broadly to apply to all contracts for the improvement of real estate.").

Applying what Indiana law calls a "commonsense analysis," (Dkt. 39 at 7 (citing *Gill v. Evansville Sheet Metal Works, Inc.*, 970 N.E.2d 633, 640-42 (Ind. 2012)), the Indiana Court determined that the Purchase Order was not a contract for improvement of real estate. In doing so, the Indiana Court relied on Gill, which entailed an "analogous setting," namely, whether a particular action "is 'an improvement to real property,' such that it falls within the construction statute of repose." Dkt. 39 at 7. *Gill* articulates a five-factor test for identifying an improvement

---

[3] The Indiana Court determined that "[i]f this contract falls within the Indiana anti-venue statute, the result is the same whether Indiana or Delaware law applies." Dkt. 39 at 5.

to real property:

> [A]n "improvement to real property" is (1) an addition to or betterment of real property; (2) that is permanent; (3) that enhances the real property's capital value; (4) that involves the expenditure of labor or money; (5) that is designed to make the property more useful or valuable; and (6) that is not an ordinary repair.

970 N.E.2d at 644 (underlining in original).

Under the Indiana Court's analysis, the Purchase Order failed to satisfy the *Gill* test. Dkt. 39 at 8. First, the Indiana Court quoted the "Scope of Work and Supply" of the Purchase Order:

> The scope of the supply will consist of the engineering of the CSM System proper, refractory lining and the supply of the combustion system, controls, and all of the associated components and equipment needed to complete a new operational MCAM based on Gillespie & Powers, Inc.'s engineering documents.

Dkt. 39 at 8 (quoting Dkt. 1-1 at 83). Moreover, the Indiana Court noted that Alcoa, not Gillespie, was responsible for all foundation work. *Id*. Finally, the Indiana Court observed, "the pricing for the [Purchase Order] did not include civil or any foundation work, the furnace's utility tie-ins were to be within fifty feet, and the utilities and potable water were to be provided to the seller by Kaiser and to be within 25' of the work area." *Id*. All of these factors, the Indiana Court explained, "support[] the conclusion that the [Purchase Order] was one for equipment, which, while it may have added value to [Alcoa]'s business, did not add value to the Property itself." *Id*.

The Indiana Court's holding that the Purchase Order was not a contract for the improvement of real estate constitutes the binding law of the case. Under the law of case doctrine, "when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." Absent "extraordinary circumstances, courts should be loathe to revisit prior decisions of its own or of a coordinate court." *Jordan v. Mirra*, 2019 U.S. Dist. LEXIS 219450 (D. Del. Dec. 20, 2019), at *22 (internal quotations omitted). It is long settled

7

that "[u]nder the law of the case doctrine, once an issue is decided, it will not be relitigated in the same case, except in unusual circumstances." *Hayman Cash Register Co. v. Sarokin*, 669 F.2d 162, 165 (3d Cir. 1982).

This doctrine becomes even more important where, as here, the issue involves a decision by a different court. Hayman Cash Register directs that "[a]dherence to law of the case principles is even more important in this context where the transferor judge and the transferee judge are not members of the same court." 669 F.2d at 169. In such a case, "the principles of comity among courts of the same level of the federal system provide a further reason why the transferee court should not independently re-examine an issue already decided by a court of equal authority." *Id*.

Here, the Indiana Court determined as a matter of law that the Purchase Order was not a contract for the improvement of property. Dkt. 39 at 8-9. This substantive determination was necessary to the Transfer Order, because the forum-selection clause upon which the Transfer Order was predicated would not have been enforceable had the Purchase Order been a contract for the improvement of real estate. *Id*. at 6-7 (citing Ind. Code § 32-28-3-17). And because Indiana's mechanic's lien statute does not permit such liens in relation to the sale of personal property such as the Scrap Melter (Ind. Code § 32-28-3-1), this decision by the Indiana Court invalidates the Mechanic's Lien and defeats Gillespie's foreclosure claim as a matter of law. This Court should abide by the decision of the Indiana Court, and dismiss Warrick Real Estate from this action.

C. **Even If a Mechanic's Lien Were Valid, Warrick Real Estate's Bond Releases It and the Claim Against Warrick Real Is Moot**

Although the Indiana Court did not employ a fixture analysis to the Purchase Order (*see* Dkt. 39 at 9), doing so would lead to the same result and defeat the Mechanic's Lien as a matter

8

of law. Indiana statute[4] permits the filing of a mechanic's lien, in relevant part, only for "the erection, alteration, repair, or removal of a house, mill, manufactory, or other building." Ind. Code § 32-28-3-1(a)(1)(A) (internal subsection breaks omitted). Accordingly, "personal property or non-fixtures are not lienable." *Dinsmore v. Lake Elec. Co.*, 719 N.E.2d 1282, 1286 (Ind. Ct. App. 1999).

Industrial equipment "is typically thought of as personal property." *Id*. Indiana law applies a three-part test to differentiate between personal property and a fixture:

> In order to determine whether a particular article has become so identified with real property as to become a fixture, Indiana uses a three part test which considers: 1) actual or constructive annexation of the article to the realty, 2) adaptation to the use or purpose of that part of the realty with which it is connected, and 3) the intention of the party making the annexation to make the article a permanent accession to the freehold.

*Id*. Intent "may be determined by the nature of the article, relation and situation of the parties making the annexation, and the structure, use, and mode of annexation." *Id*. (internal quotation omitted). Intent is the controlling element, *Dinsmore* instructs, and "[i]f there is doubt as to intent, the property should be regarded as personal." *Id*. at 1287.

In *Dinsmore*, a tenant (NIR) entered into a lease agreement with a landowner (Dinsmore Farms) for the use of land on which NIR's asphalt-processing facility was located. *Id*. at 1284-85. NIR contracted with Lake Electric to perform various work on the asphalt facility over a period of years, the last of which (and the only of which performed within the period for filing a notice of intent to hold a lien) was to perform repairs to an outside bagger system on the facility. *Id*. at 1285. The bagger was a truck-portable piece of equipment, and the terms of NIR's lease with *Dinsmore*

---

[4] As discussed above, the Indiana Court applied Indiana law to determine whether this litigation concerns a contract for the improvement of real estate. *See* Dkt. 39 at 6-7 (citing Ind. Code § 32-28-3-17).

Farms permitted NIR to remove the entire asphalt plant from the property. *Id*. at 1287.

Reversing a trial judgment in favor of Lake Electric, *Dinsmore* explains that "[t]he bagger may appear to be more in the nature of a trade fixture," a type of "personal property put on the premises by a tenant which can be removed without substantial or permanent damage to the premises and is capable of being set up or used in business elsewhere." *Id*. (internal quotation omitted). Because the bagger was removable and because NIR leased the land on which it was situated, *Dinsmore* concludes, the work on it was not subject to a mechanic's lien.

The same is true here. Like the landowner in *Dinsmore*, Warrick Real Estate owns the Real Estate, but not the Scrap Melter itself. Complaint ¶¶ 5-6, 29. And the scope of the Purchase Order comprised "engineering of the CSM System proper, refractory lining and the supply of the combustion system, controls, and all of the associated components and equipment needed to complete a new operational MCAM based on Gillespie & Powers, Inc.'s engineering documents," (Dkt. 1-1 at 83), not an improvement to real estate. The Purchase Order refers to "Equipment" and "Services," (*id*. at 251), with "Services" defined as "all the services to be performed by the Seller under the Contract, including: (i) the design, manufacture and delivery of the Equipment; (ii) the design of those parts of the Facility as detailed in the Company's Requirements as being the responsibility of the Seller; and (iii) the performance of the Associated Services." *Id*. at 250.

Gillespie's limited scope of work under the Purchase Order further shows that the Scrap Melter is not a fixture under *Dinsmore*, which considers "actual or constructive annexation of the article to the realty," "adaptation to the use or purpose of that part of the realty with which it is connected," and, most importantly, "the intention of the party making the annexation to make the article a permanent accession." 719 N.E.2d at 1286. Under the Purchase Order, an outside engineering firm familiar with the Real Estate – not Gillespie – was to design all "collection hood

supports, duct supports, etc." Dkt. 1-1 at 169. And as the Indiana Court has already explained, Alcoa "was responsible for the design, supply and installation of the foundation and all foundation work (including all embedded steel and anchor bolts)." Dkt. 39 at 8 (quoting Dkt. 1-1 at 64-65 (internal quotations omitted). Additionally, as the Indiana Court notes, "the pricing for the Project did not include civil or any foundation work, the furnace's utility tie-ins were to be within fifty feet, and the utilities and potable water were to be provided to the seller by Kaiser and to be within 25' of the work area." *Id*. (citing Dkt. 1-1 at 41-42).

All these facts illustrate that the Scrap Melter is personal property, intended by all to be delivered to Alcoa and used in real estate that was not to be improved or otherwise modified by Gillespie. Consistent with these expectations, the parties to the Purchase Order agreed that Gillespie would not file any liens in connection with the Purchase Order. Dkt. 1-1 at 273. Under the *Dinsmore* test, the Scrap Melter is not a fixture. It is therefore not lienable, because it is a piece of equipment distinct from the Real Estate, owned by a different entity than the one that owns the Real Estate, and was sold and delivered under a Purchase Order under which Gillespie made no direct improvements or changes to the Real Estate. Gillespie's claim against Warrick Real Estate fails as a matter of law, and this Court should dismiss it.

**D. Warrick Real Estate's Bond Releases the Mechanic's Lien and Moots the Only Claim Against It**

In addition to being invalid in the first instance because the Purchase Order is not a lienable contract, the Mechanic's Lien has been released as a matter of Indiana law. Indiana statute provides that in a lien-foreclosure action, the defendant "may file in the action a written undertaking with surety to be approved by the court," ( Ind. Code § 32-28-3-11(a)) and once such undertaking is filed and approved, the court "shall enter an order releasing the property from the lien" and "the property shall be discharged from the lien." *Id*. § 11(c).

Here, Warrick Real Estate has bonded off the lien, which the Indiana Court approved. Dkt. 28 at 2. The Indiana Court has ordered that the Real Estate "shall be and hereby is released from the Lien and shall be and hereby is discharged from the Lien upon the filing of the fully executed Bond with the Court within seven (7) days of this Order," (*id*.), which bond Warrick Real Estate timely filed. *See* Dkt. 29. For this additional reason, this Court should dismiss Warrick Real Estate from this action.

## V. CONCLUSION

For all the foregoing reasons, this Court should dismiss Defendant Warrick Real Estate, LLC from this matter with prejudice.

Dated: April 3, 2024

**K&L GATES LLP**

*/s/ Steven L. Caponi*
Steven L. Caponi (No. 3484)
Matthew B. Goeller (No. 6283)
Megan E. O'Connor (No. 6569)
600 N. King Street, Suite 901
Wilmington, DE 19801
Phone: (302) 416-7000
steven.caponi@klgates.com
matthew.goeller@klgates.com
megan.oconnor@klgates.com

*Attorneys for Defendant Warrick Real Estate LLC*